UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

LAURIE KOHEL,

Plaintiff,

v. Case No. 2:26-cv-1728

MILWAUKEE AREA TECHNICAL COLLEGE;
JENNIFER MIKULAY, individually;
STEPHANIE TOWNSEND, individually;
ELLE BONDS-JONES, individually;
ANTHONY CRUZ, individually,
SHERRY TERRELL-WEBB, individually; and
DAN MCCOLGAN, individually,

Defendants.

---

**COMPLAINT**

---

Plaintiff Laurie Kohel ("Plaintiff" or "Kohel"), by her undersigned attorneys, for her Complaint against MATC Milwaukee Area Technical College ("MATC" or "MATC") and against Jennifer Mikulay, Stephanie Townsend, Elle Bonds-Jones, Anthony Cruz, Sherry Terrell-Webb and Dan McColgan, each sued in her or his individual capacity (collectively, the "Individual Defendants," and together with MATC, "Defendants"), alleges and states as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory, injunctive, and monetary relief to redress MATC's unlawful discrimination against Kohel on the basis of her race, sex, and disability, and MATC's unlawful retaliation against Kohel for engaging in activity protected under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); and 42 U.S.C. §§ 1981 and 1983, which secure Kohel's right to be free from race discrimination in the making and termination of contracts and from deprivation, under color of state law, of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. Kohel further brings claims under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), for MATC's interference with her right to be restored to her position following FMLA leave and for retaliating against her for exercising her rights under the FMLA.

2. Kohel's claims arise from a sustained course of conduct by MATC, spanning from 2020 through the termination of her employment in January 2025, during which Kohel, a long-tenured, high-performing employee, was repeatedly demoted, subjected to derogatory comments about her race, sex, and age, denied opportunities afforded to similarly situated younger, male, and/or non-White colleagues, and subjected to a hostile work environment. When Kohel repeatedly and in good faith opposed what she reasonably believed to be unlawful discriminatory practices, and filed Discrimination Complaints with the Equal Rights Division of the Wisconsin Department of Workforce Development ("ERD"), which were cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), MATC retaliated against her, including by manufacturing a downgrade of her performance rating and suddenly imposing new medical-documentation demands to continue a long-standing disability accommodation she had used without incident for approximately eighteen months. MATC's course of retaliatory conduct culminated in the termination of Kohel's employment in January 2025, notwithstanding Kohel's

more than fourteen years of service and her role, only months earlier, in securing one of the largest federal grant awards in MATC's history.

3. Following full investigations, the ERD issued Initial Determinations finding Probable Cause to believe that MATC violated the Wisconsin Fair Employment Act with respect to each of the categories of discrimination and retaliation alleged in this Complaint.

4. The EEOC has issued Kohel Notices of Right to Sue with respect to each of the underlying charges referenced herein, and this action is timely filed within ninety (90) days of Kohel's receipt of each such Notice.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4), 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), 42 U.S.C. § 12117(a), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. §§ 1981 and 1983, because this action arises under the laws and Constitution of the United States, specifically Title VII, ADEA, ADA, FMLA, and the Fourteenth Amendment's Equal Protection Clause as enforced through 42 U.S.C. §§ 1981 and 1983.

6. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because MATC resides in this District, the unlawful employment practices alleged herein were committed in this District, and the employment records relevant to those practices are maintained and administered in this District. MATC's principal place of business is located at 700 W. State Street, Milwaukee, Wisconsin, within the Eastern District of Wisconsin.

8. Assignment to the Milwaukee Division is appropriate because the events giving rise to this action occurred in Milwaukee County, Wisconsin.

## PARTIES

9. Kohel is an adult individual residing at 5620 Berry Court, Greendale, Wisconsin, within the Eastern District of Wisconsin. Kohel is female, White, was born on April 28, 1964, and has a disability within the meaning of the ADA, namely a permanent respiratory/allergy condition.

10. At all times relevant hereto, Kohel was an "employee" of MATC within the meaning of Title VII, 42 U.S.C. § 2000e(f); ADEA, 29 U.S.C. § 630(f); ADA, 42 U.S.C. § 12111(4); and FMLA, 29 U.S.C. § 2611(2).

11. Defendant Milwaukee Area Technical College is a Wisconsin technical college district organized and operating under Wis. Stat. ch. 38, with its principal offices located at 700 W. State Street, Milwaukee, Wisconsin 53233.

12. At all times relevant hereto, MATC was Kohel's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b); the ADEA, 29 U.S.C. § 630(b); and the ADA, 42 U.S.C. § 12111(5), in that MATC is engaged in an industry affecting commerce and has employed far more than the statutory minimum number of employees required under each respective statute for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

13. Defendant Jennifer Mikulay is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, Mikulay was employed by MATC as Director of Grants and later as Director of Quality, Planning & Assessment, and acted under color of state law within the scope of her employment. Mikulay is sued in her individual capacity.

14. Defendant Stephanie Townsend is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, Townsend was employed by MATC as

Manager of Special Projects and later as Manager, Sponsored Projects, and acted under color of state law within the scope of her employment. Townsend is sued in her individual capacity.

15. Defendant Elle Bonds-Jones (formerly known as Laquitha Bonds) is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, Bonds-Jones was employed by MATC as Vice President of Human Resources, previously Vice President of Human Relations, and acted under color of state law within the scope of her employment. Bonds-Jones is sued in her individual capacity.

16. Defendant Anthony Cruz is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, Cruz was employed by MATC as its President and acted under color of state law within the scope of his employment. Cruz is sued in his individual capacity.

17. Defendant Sherry Terrell-Webb is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, Terrell-Webb was employed by MATC as its Vice President and General Counsel and acted under color of state law within the scope of her employment. Terrell-Webb is sued in her individual capacity.

18. Defendant Dan McColgan is, upon information and belief, an adult resident of the State of Wisconsin. At all times relevant hereto, McColgan was employed by MATC as its Deputy Title IX Coordinator/Director of Employee Relations and acted under color of state law within the scope of his employment. McColgan is sued in his individual capacity.

19. Mikulay, Townsend, Bonds-Jones, Cruz, Terrell-Webb, and McColgan are referred to collectively herein as the “Individual Defendants,” and, together with MATC, as “Defendants.”

## ADMINISTRATIVE EXHAUSTION

20. Kohel has fully exhausted her administrative remedies with respect to each claim alleged herein, as set forth below.

***Charge No. 1 — ERD Case No. CR202101288 / EEOC No. 443202101092C***

21. On June 9, 2021, Kohel filed a Charge of Discrimination with the EEOC, assigned Case No. 443202101092C and cross-filed with the ERD, alleging that MATC discriminated against her on the basis of race, sex, and age by harassing Kohel, degrading the terms or conditions of Kohel's employment, and demoting Kohel twice between March 1, 2020 and May 10, 2021.

22. The EEOC issued Kohel a Notice of Right to Sue on this Charge on July 23, 2026. This action is filed within ninety (90) days of Kohel's receipt of that Notice.

***Charge No. 2 — ERD Case No. CR202102633 / EEOC No. 443202200529C***

23. On November 22, 2021, Kohel filed a Charge of Discrimination, assigned EEOC No. 443202200529C and cross-filed with the ERD, alleging that MATC discriminated against her on the basis of sex, race, and age, and retaliated against her for opposing discrimination and for filing a prior complaint of discrimination (ERD Case No. CR202101288).

24. On January 26, 2023, following its investigation, the ERD issued its Initial Determination finding Probable Cause to believe that MATC violated the Wisconsin Fair Employment Law in five areas by discriminating against Kohel in harassment and other terms and conditions of employment because of her sex; in harassment, other terms and conditions of employment, and assignment because of her race; in harassment, other terms and conditions of employment, and assignment because of her age; because she opposed a discriminatory practice; and, because she filed a complaint under the Act.

25. The EEOC issued Kohel a Notice of Right to Sue on this Charge on July 23, 2026. This action is filed within ninety (90) days of Kohel's receipt of that Notice.

***Charge No. 3 — ERD Case No. CR202300643 / EEOC No. 26G202300570***

26. On February 27, 2023, Kohel filed a Complaint of Discrimination with the ERD, which was cross-filed with the EEOC and assigned EEOC No. 26G202300570, alleging that MATC engaged in or permitted harassment and discriminated against her in the terms and conditions of her employment because of her race, color, sex, and age, and because of her opposition to discrimination and prior filing of discrimination complaints with the ERD.

27. On October 23, 2024, following its investigation, the ERD issued its Initial Determination finding Probable Cause to believe that MATC violated the Wisconsin Fair Employment Law by discriminating against Kohel in other terms and conditions of employment because she opposed a discriminatory practice and because she made a complaint under the Act.

28. The EEOC issued Kohel a Notice of Right to Sue on this charge on July 17, 2026. This action is filed within ninety (90) days of Kohel's receipt of that Notice.

***Charge No. 4 — ERD Case No. CR202302102 / EEOC No. 26G202301222***

29. On July 21, 2023, Kohel filed a Complaint of Discrimination with the ERD, later amended on October 11, 2024, which was cross-filed with the EEOC and assigned EEOC No. 26G202301222, alleging that MATC discriminated against her in the terms and conditions of her employment because of her sex, age, and disability, and because of her opposition to discrimination and prior filing of discrimination complaints with the ERD.

30. On October 24, 2024, following its investigation, the ERD issued its Initial Determination finding Probable Cause to believe that MATC violated the Wisconsin Fair Employment Law by discriminating against Kohel in terms and conditions of employment

because of her disability, because she opposed a discriminatory practice, and because she made a complaint under the Act.

31. The EEOC issued Kohel a Notice of Right to Sue on this charge on July 23, 2026. This action is filed within ninety (90) days of Kohel's receipt of that Notice.

***Charge No. 5 — ERD Case No. CR202403247/ EEOC Charge No. 26G202500438***

32. On December 19, 2024, Kohel filed a fifth Complaint of Discrimination with the ERD, assigned ERD Case No. CR202403247 and cross-filed with the EEOC as EEOC Charge No. 26G202500438, alleging that MATC discriminated against her on the basis of her race, sex, age, and disability, and retaliated against her for engaging in protected activity—including her prior charges of discrimination and her internal complaints of retaliation—by terminating her employment on December 13, 2024.

33. The EEOC issued Kohel a Notice of Right to Sue on this charge on or about July 23, 2026. This action is filed within ninety (90) days of Kohel's receipt of that Notice.

34. More than sixty (60) days have elapsed since Kohel filed each of the above-referenced charges alleging age discrimination and retaliation, satisfying the procedural prerequisites of 29 U.S.C. § 626(d) for the ADEA claims asserted herein.

35. All conditions precedent to the filing of this action have been performed or have occurred.

## FACTUAL ALLEGATIONS

### Background and Kohel's Employment History

36. MATC hired Kohel in June 2010 as a Program Coordinator.

37. In 2014, MATC promoted Kohel to Manager, Grants and Development.

38. In 2017, MATC assigned Kohel for six months as Interim Director of Counseling and Advising.

39. Throughout her employment, Kohel consistently received strong performance evaluations, including ratings of "Exemplary" or "Exceeds Expectations" in 2017, 2018, 2019, and 2022

40. In February 2020, MATC reorganized its Grants Department into its Institutional Effectiveness division, placing the department under the supervision of Dr. Jennifer Mikulay (White, female, then in her fifties), Director—Grants Department.

**Mikulay's Discriminatory Comments and Conduct (2020–2021)**

41. During April 2020, Mikulay removed Kohel's direct report from her supervision and demoted Kohel from Manager to Coordinator without the advance notice required by MATC policy.

42. Mikulay's stated reason for the demotion was that Kohel had no direct reports.

43. Beginning in the early summer of 2020, Mikulay began making derogatory comments to and about Kohel on the basis of her race, sex, and age, including but not limited to the following:

a. Mikulay repeatedly referred to "middle-aged White women" in a derogatory manner, prompting Kohel to respond, "excuse me, I'm a middle-aged White woman";

b. Mikulay stated that "that's one thing the college likes about middle-aged women—no personal boundaries, they will work nights and weekends";

c. Mikulay stated that she did not want any more "middle-aged, White women grant writers";

d. in the winter of 2020–2021, after a colleague resigned, Mikulay pulled the job posting for the vacant position because she did not want a middle-aged White woman in the position; and

e. Mikulay stated in a meeting that the college needed to "hire younger people in order to get some innovation."

44. In April 2020, MATC reclassified Kohel's position from Manager, Grants and Development to Coordinator, Grants; Kohel's first demotion. MATC did not post this position change to the board minutes nor in organization-wide communications in violation of normal protocol.

45. In May 2020, Mikulay hired a Black female as a manager with no direct reports. Mikulay prodded Kohel to react to the hire when she had been demoted.

46. On July 9, 2020, Mikulay berated Kohel so intensely during a meeting that Kohel was brought to tears, and shortly thereafter, failed to respond to a funeral time-off request, and demanded that Kohel provide a doctor's note excusing an absence, when the timeline did not warrant and additionally contrary to MATC's own attendance policy, which had been suspended during the COVID-19 pandemic.

47. In October 2020, Mikulay removed Kohel from providing post-award oversight on a federal SAMHSA grant that Kohel had authored and overseen, reassigning that role to a similarly situated colleague, while expecting Kohel to perform the underlying post-award grant-report writing without the corresponding oversight role.

**Kohel's Protected Opposition Activity During February and March 2021**

48. In or around January 2021, Kohel complained that Mikulay was discriminating against minority job candidates she was trying to attract by reducing the pay and title of the posted position as low as possible. Kohel received no response to her complaint.

49. In February 2021, Kohel opposed what she reasonably and in good faith believed to be a racially discriminatory practice by objecting, during a meeting regarding the Wisconsin Technical College System's Emergency Grant application, to a proposal to distribute emergency

relief funds to students through a third-party vendor rather than directly to students, which Kohel believed reflected the discriminatory premise that minority students could not be trusted to use the funds as intended.

50. After Kohel raised this concern, Laura Bray, Vice President College Advancement and External Communication, expressed displeasure to Dr. Mikulay, who then told Kohel she was not to provide input during such meetings. As a result, Kohel was excluded from collaborative participation in proposal development.

51. March 5, 2021, in response to Kohel's complaint of discrimination, Mikulay demoted her from Coordinator, Grants & Development to Senior Specialist, Grant Writing. This was Kohel's second demotion over a ten-month period. Mikulay told Kohel that she could not be a Coordinator because the duties of a Coordinator include post-award responsibilities which she had taken away from Kohel. Mikulay said she would treat Kohel as if she were a new hire, and knew that Kohel would want to look for another job. MATC did not post this position change to the board minutes nor in organization-wide communications in violation of normal protocol.

52. On March 5, 2021, Kohel reported to MATC's Human Resources Liaison, Brittney J'nay Gray ("Gray"), Mikulay's derogatory comments about middle-aged White women that were discriminatory against her because of her sex and age. In response, Mikulay admitted during the meeting that she did not want a middle-aged White woman grant writer.

53. Immediately after the March 5, 2021 meeting Gray told Kohel to file an internal complaint regarding Mikulay's discriminatory statement.

54. Kohel was the only member of the Grants & Resource Development Team who was demoted.

55. On March 18, 2021, Kohel discovered she had been locked out of MATC's computer systems and that Human Resources had terminated her as an employee in the system.

56. On March 22, 2021, Kohel submitted an eleven-page written internal complaint of discrimination to Bonds-Jones, detailing Mikulay's discriminatory comments and conduct.

57. In Spring 2021, MATC approved Kohel's March 25, 2021 submittal for intermittent leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), for a serious health condition within the meaning of 29 U.S.C. § 2611(11). MATC renewed Kohel's intermittent FMLA leave each year thereafter through 2024.

58. During Spring 2021, Mikulay moved Kohel out of her office, gave it to another employee, and put Kohel in a small dirty office in Foundation Hall where there were known health hazards.

59. Numerous employees, including Kohel, complained to administration that the environment in Foundation Hall was causing them to suffer adverse health conditions. MATC failed to thoroughly investigate, summarily dismissed employee complaints, refused Kohel's request to relocate from Foundation Hall, and required Kohel to submit a formal request for accommodation based on a disability.

60. Kohel filed a Complaint of Discrimination on June 9, 2021 (ERD Case No. CR202101288), which was cross-filed with the EEOC.

61. During August and September 2021, Mikulay refused to respond to Kohel's work emails, requiring Kohel to seek intervention from Mikulay's supervisor, Dr. Christine Manion ("Manion"), on September 3, 2021, to obtain the responses necessary to perform her job duties.

62. On September 27, 2021, the Director of Counseling, Walter Lanier ("Lanier"), emailed members of the counseling team that Kohel's position in the Grants Department "was going away," further undermining Kohel's job security.

63. On September 29, 2021, Mikulay departed from prior practice by refusing to share grant activity with Kohel, preventing her from completing cross-departmental collaboration duties.

64. In September 2021, Kohel was approached by Bonds-Jones about transferring to an open Licensed Professional Counselor ("LPC") position—a credential Kohel holds—in the Counseling and Psychological Services Department. A week later, MATC, through Lanier and Bonds-Jones, refused to allow Kohel to transfer into the position without it first being posted, even though a substantially younger, minority employee was previously allowed to transfer to an LPC position without a posting.

65. On or about October 1, 2021, a minority employee was transferred laterally from the Grants Department io the Counseling and Psychological Services Department without a posting.

66. Kohel filed a Complaint of Discrimination with the ERD on November 22, 2021 (ERD Case No. CR202102633), which was cross-filed with the EEOC.

**2022–2023: Continued Retaliation Following Kohel's ERD Filings**

67. In July 2022, Mikulay lowered Kohel's performance score without following the scoring matrix, MATC refused to explain to Kohel her reduced rating. The score was eventually corrected/raised accordingly after Kohel's complaint follow-up.

68. In January 2023, Stephanie Townsend ("Townsend") assumed the grant manager duties that Mikulay took away from Kohel, was given the title of Manager of Special Projects, and was assigned as Kohel's direct supervisor.

69. On January 3, 2023, Mikulay invited all department employees, excluding Kohel, to a "meet and greet" gathering with Townsend. MATC falsely claimed that the meet and greet was only for Coordinators. MATC falsely claimed later that Kohel was excluded because she worked from home. These reasons were a pretext for retaliation and discrimination given that the real purpose of the gathering was for all department staff to meet their new supervisor.

70. In January 2023, Kohel asked to meet individually with Manion regarding ongoing discrimination and retaliation. Manion refused to meet with Kohel one-on-one, stating that Kohel's complaints were "an issue with you and your supervisor", knowing that Mikulay was the subject of Kohel's discrimination and retaliation complaints.

71. In February 2023, MATC instructed their law firm, who was opposing counsel in Kohel's ERD/EEOC cases filed against MATC, to conduct an interrogation of Kohel. Unbeknownst to Kohel, the assigned investigator was an attorney representing MATC who gave her no prior notice or opportunity to have her own counsel present while questioning her about the facts supporting her complaints of discrimination and retaliation.

72. Kohel filed a third Complaint of Discrimination with the ERD on February 27, 2023 (ERD Case No. CR202300643), which was cross-filed with the EEOC.

**The Retaliatory Performance Downgrade and Withdrawal of Kohel's Disability Accommodation During June and July 2023**

73. Kohel has a permanent respiratory/allergy condition constituting a disability within the meaning of the ADA. Kohel submitted medical documentation for a permanent accommodation, and since January 2022, MATC had granted Kohel a reasonable accommodation permitting her to work 100% remotely because of this condition.

74. On June 28, 2023, Kohel met with Townsend to discuss her annual performance review. Townsend notified Kohel that she would receive only a "met expectations" rating

because Kohel continued to oppose retaliation and discrimination in the workplace and had not "moved forward" by ceasing her complaints. Kohel objected to Townsend penalizing her for protected activity.

75. On June 28, 2023, after HR and Townsend discussed Kohel's objections, Townsend met again with Kohel and confirmed that her lower rating and basis for it would stand.

76. On July 3, 2023, Townsend issued Kohel's final performance review with the rating significantly lower than her historical "Exemplary" and "Exceeds Expectations" ratings, based on Kohel's unwillingness to "move forward" from her complaints of discrimination and retaliation. The review also contained specific written negative comments criticizing Kohel for her unwillingness to "move forward" in reference to her ongoing complaints of discrimination and retaliation.

77. On July 12, 2023, Kohel filed an internal complaint alleging that Townsend and Human Resources had engaged in prohibited retaliation against her in the performance review process.

78. On or about July 18, 2023, Townsend informed Kohel for the first time that she needed to complete a Flexible Work Arrangement ("FWA") form and provide new medical documentation from her physician to continue her long-standing, 100% remote-work accommodation even though Plaintiff's underlying medical condition had not changed; Plaintiff had already provided medical documentation supporting the accommodation in 2022; and, Plaintiff had been permitted to work under the accommodation without incident or inquiry for approximately eighteen months. MATC's asserted justification that the accommodation had

technically expired in December 2022 was a pretext, as it was a permanent accommodation and MATC had not raised the issue until a week after Kohel's July 12, 2023 complaint of retaliation.

79. Kohel filed a fourth Complaint of Discrimination with the ERD on July 21, 2023 (ERD Case No. CR202302102), later amended on October 11, 2024, which was cross-filed with the EEOC.

**Kohel's Continued Opposition Activity and MATC's Escalating Retaliation (2024–2025)**

80. MATC repeatedly failed to acknowledge, investigate, or take remedial measures in response to Kohel's internal complaints of discrimination and retaliation despite those complaints being escalated to two successive Presidents, executive leadership, Human Resources, the Office of Labor Relations, and internal Legal Counsel. This failure persisted even after the ERD issued multiple Probable Cause determinations finding reason to believe that MATC had engaged in unlawful discrimination and retaliation against Kohel.

81. On April 15, 2024, Kohel filed a formal grievance with the Higher Learning Commission ("HLC"), MATC's accrediting body, reporting that MATC was suffering from a systemic failure to ethically, promptly, and comprehensively address employee complaints of retaliation, discrimination, and harassment, and that MATC's Office of Labor Relations, internal Legal Counsel, and District Board had failed to act despite repeated escalation.

82. On April 23, 2024, the HLC notified Kohel that it had identified potential concerns regarding MATC's compliance with HLC's Criteria for Accreditation sufficient to forward Kohel's complaint, with identifying information redacted, to MATC for a formal response.

83. On June 20, 2024, Kohel requested from McColgan, copies of her own prior internal complaint submissions maintained in MATC's internal complaint-management system.

On June 28, 2024, McColgan refused the request in writing, asserting that, "due to pending litigation matters, the information you requested cannot be provided at this time," notwithstanding that the records sought were Plaintiff's own submissions concerning her own complaints of discrimination and retaliation.

84. During July 2024, Kohel was excluded from the public launch announcement for a large consortium grant award she helped secure for MATC, while Townsend and others from the proposal preparation team were present at the announcement.

85. In or about September 2024, Kohel directly reported to MATC's President, Dr. Anthony Cruz ("Cruz") twice that she continued to experience retaliation and a hostile work environment, and asked him to intervene.

86. Rather than address Kohel's renewed complaints, Human Resources and Kohel's then-supervisor, Townsend, convened two "coaching" meetings directed at Kohel. During the second meeting Townsend told Kohel that she regularly discusses Kohel and Kohel's work directly with Kohel's colleagues rather than through Kohel and would not permit Kohel to speak. Despite Kohel's repeated requests over the following two months, Townsend refused to provide her written meeting recap as promised.

87. In the fall of 2024, as a direct result of MATC's continued failure to stop the discrimination and retaliation described herein, the serious health condition for which Kohel had been approved for intermittent FMLA leave since March 2021 was exacerbated.

88. Kohel's physician certified that, beginning in the fall of 2024, Kohel required continuous leave under the FMLA due to her exacerbated serious health condition. Kohel's continuous FMLA leave continued through the end of her employment with MATC.

89. At no time during or upon the conclusion of Kohel's continuous FMLA leave did MATC offer to restore Kohel to her former position or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment, as required by 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.214.

90. On December 13, 2024, (less than sixty days after Plaintiff's renewed complaint to Dr. Cruz), Defendants jointly decided, upon information and belief, to terminate Kohel's employment. That decision was implemented through a thirty-day notice issued to Kohel by Townsend, terminating her employment effective on or about January 12, 2025.

91. MATC asserted that eliminating Kohel's position would generate approximately $66,000 in annual savings. However, that explanation was pretextual. Kohel regularly secured millions of dollars in grant funding for MATC, and less than five months earlier, in July 2024, she served as the institution's designated grant writer for a regional consortium's $49 million federal grant project, helping obtain $4 million for MATC, one of the largest federal grant awards in its history. Despite her key role in securing the grant, she was excluded from the public announcement of the award, while her supervisor and other proposal team members were present.

92. MATC treated similarly situated employees better than Kohel because of her age, sex, and race. These comparators include approximately ten employees, nine of whom reported to Kohel's last and/or former supervisors-Townsend and Mikulay; seven of whom were non-White, and two of whom were substantially younger than Kohel. None were subjected to a pattern of demotion, exclusion, and termination like that suffered by Kohel.

93. On May 12, 2025, MATC terminated MATC's independent restorative-justice consultant after the consultant corroborated the pattern of discrimination and retaliation reported by Kohel.

**The ERD's Ten Probable Cause Findings**

94. Following full investigations, the ERD issued ten Probable Cause determinations that MATC had violated the Wisconsin Fair Employment Law by:

a. discriminating against Kohel in harassment and other terms and conditions of employment because of her sex (ERD Case No. CR202102633);

b. discriminating against Kohel in harassment, other terms and conditions of employment, and assignment because of her race (ERD Case No. CR202102633);

c. discriminating against Kohel in harassment, other terms and conditions of employment, and assignment because of her age (ERD Case No. CR202102633);

d. discriminating against Kohel in terms and conditions of employment because of her disability (ERD Case No. CR202302102); and

e. discriminating and retaliating against Kohel because she opposed discriminatory practices and because she filed complaints of discrimination (ERD Case Nos. CR202102633, CR202300643, and CR202302102).

**COUNT I**
**Title VII of the Civil Rights Act of 1964**
**Race Discrimination (Disparate Treatment and Hostile Work Environment)**

95. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

96. Kohel is White and is a member of a protected class under Title VII.

97. MATC subjected Kohel to harassment and to disparate treatment in the terms, conditions, and privileges of her employment, including in assignment, because of her race, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

98. The harassment to which Kohel was subjected was sufficiently severe or pervasive to alter the conditions of Kohel's employment and create an abusive working environment, and was directed at Kohel because of her race.

99. MATC knew or should have known of the discriminatory and harassing conduct and failed to take prompt and effective remedial action.

100. As a direct and proximate result of MATC's unlawful conduct, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

101. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT II**
**Title VII of the Civil Rights Act of 1964**
**Sex Discrimination (Disparate Treatment and Hostile Work Environment)**

102. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

103. Kohel is female and is a member of a protected class under Title VII.

104. MATC subjected Kohel to harassment and to disparate treatment in the terms and conditions of her employment because of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

105. The harassment to which Kohel was subjected, including but not limited to repeated derogatory comments about "middle-aged White women" and MATC's stated

unwillingness to continue employing “middle-aged, White women grant writers,” was sufficiently severe or pervasive to alter the conditions of Kohel’s employment and create an abusive working environment.

106. As a direct and proximate result of MATC’s unlawful conduct, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

107. MATC’s conduct was undertaken with malice or reckless indifference to Kohel’s federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT III**
**Title VII of the Civil Rights Act of 1964**
**Retaliation**

108. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

109. Kohel engaged in activity protected under Title VII, 42 U.S.C. § 2000e-3(a), by opposing practices she reasonably and in good faith believed to constitute unlawful discrimination based on race and sex, including her February 2021 objection to the third-party vendor proposal, her March 2021 reports of Mikulay’s discriminatory comments, and by participating in proceedings under Title VII, including by filing Discrimination Complaints with the ERD, cross-filed with the EEOC, on June 9, 2021, November 22, 2021, and February 27, 2023.

110. In response to Kohel’s protected activity, MATC took materially adverse actions against Kohel, including but not limited to demoting her in March 2021, excluding her from collaborative work and decision-making, locking her out of MATC’s computer systems, withholding information necessary to perform her job duties, denying her a transfer opportunity

afforded to similarly situated colleagues, refusing to meet with her regarding her complaints, excluding her from a department gathering, and downgrading her performance evaluation.

111. A causal connection exists between Kohel's protected activity and the adverse actions taken against her, as evidenced by, among other things, the temporal proximity between Kohel's protected activity and MATC's adverse actions, and direct statements by MATC's agents linking the adverse actions to Kohel's complaints.

112. As a direct and proximate result of MATC's unlawful retaliation, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

113. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT IV**
**Age Discrimination in Employment Act**
**Age Discrimination**

114. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

115. Kohel was born on April 28, 1964, and was at all relevant times over the age of forty, a member of the class protected by the ADEA, 29 U.S.C. § 631(a).

116. MATC subjected Kohel to harassment and disparate treatment in the terms, conditions, and privileges of her employment, including in assignment, because of her age, in violation of the ADEA, 29 U.S.C. § 623(a).

117. Kohel's age was a determinative factor in MATC's adverse treatment of her, as evidenced by, among other things, Mikulay's repeated statements that MATC did not want

"middle-aged" employees in grant-writing roles and that MATC needed to "hire younger people" for "innovation."

118. As a direct and proximate result of MATC's unlawful conduct, Kohel has suffered and continues to suffer lost wages and benefits, liquidated damages for willful violations, and other damages.

**COUNT V**
**Age Discrimination in Employment Act**
**Retaliation**

119. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

120. Kohel engaged in activity protected under the ADEA, 29 U.S.C. § 623(d), by opposing age-based discriminatory practices and by filing Discrimination Complaints based on age with the ERD, cross-filed with the EEOC.

121. In response to Kohel's protected activity, MATC took materially adverse actions against her as described above.

122. As a direct and proximate result of MATC's unlawful retaliation, Kohel has suffered and continues to suffer lost wages and benefits, liquidated damages for willful violations, and other damages.

**COUNT VI**
**Americans with Disabilities Act**
**Disability Discrimination**

123. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

124. Kohel has a permanent respiratory/allergy condition that substantially limits one or more major life activities, and/or has a record of such an impairment, and/or is regarded as

having such an impairment, and is therefore an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102.

125. Kohel was a qualified individual able to perform the essential functions of her position, with or without reasonable accommodation.

126. MATC had provided Kohel a reasonable accommodation of 100% remote work since January 2022 in connection with her disability.

127. MATC discriminated against Kohel on the basis of her disability, in violation of the ADA, 42 U.S.C. § 12112(a), by, among other things, subjecting her to new and burdensome demands to requalify for her existing accommodation, including requiring her to resubmit medical documentation and complete new paperwork, without legitimate, non-discriminatory, non-pretextual justification, and by subjecting her to disparate treatment in the terms and conditions of her employment because of her disability.

128. As a direct and proximate result of MATC's unlawful conduct, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

129. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT VII**
**Americans with Disabilities Act**
**Retaliation**

130. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

131. Kohel engaged in activity protected under the ADA, 42 U.S.C. § 12203(a), by requesting and utilizing a reasonable accommodation for her disability, by opposing conduct she

reasonably believed to be discriminatory, and by filing Discrimination Complaints with the ERD, cross-filed with the EEOC.

132. In direct and close temporal proximity to Kohel's July 12, 2023 complaint of retaliation, MATC retaliated against Kohel by, among other things, suddenly demanding that she resubmit medical documentation and complete new paperwork to continue an accommodation she had utilized without incident for approximately eighteen months.

133. As a direct and proximate result of MATC's unlawful retaliation, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

134. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT VIII**
**Title VII of the Civil Rights Act of 1964**
**Retaliatory Discharge**

135. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

136. Kohel engaged in activity protected under Title VII, 42 U.S.C. § 2000e-3(a), by opposing practices she reasonably and in good faith believed to constitute unlawful discrimination based on race and sex, by participating in ERD and EEOC proceedings through her prior Discrimination Complaints, and by renewing her complaints of retaliation and a hostile work environment to MATC's President in or about September 2024.

137. In direct and close temporal proximity to Kohel's renewed complaints, and in furtherance of the same pattern of retaliation alleged throughout this Complaint, MATC terminated Kohel's employment on December 13, 2024, less than sixty days later, purportedly due to the elimination of her position.

138. MATC has asserted that it terminated Kohel's employment for financial and operational reasons, including an asserted annual cost savings of approximately $66,000 from outsourcing Kohel's grant-writing function to contract writers. That justification is pretextual. Less than five months before her termination, Kohel secured a $4 million federal grant award for MATC (one of the largest single federal grant awards in MATC's history) and MATC's stated rationale for eliminating her position has shifted over time among cost savings, restructuring, and operational needs.

139. A causal connection exists between Kohel's protected activity and MATC's decision to terminate her employment, as evidenced by, among other things, the temporal proximity between Kohel's protected activity and her termination, MATC's shifting and pretextual justifications, and the broader pattern of escalating retaliation described throughout this Complaint.

140. As a direct and proximate result of MATC's unlawful retaliatory discharge, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

141. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT IX**
**Age Discrimination in Employment Act**
**Retaliatory Discharge**

142. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

143. Kohel engaged in activity protected under the ADEA, 29 U.S.C. § 623(d), by opposing age-based discriminatory practices, by filing charges of age discrimination with the

ERD, cross-filed with the EEOC, and by renewing her complaints of retaliation to MATC's President in or about September 2024.

144. In direct and close temporal proximity to Kohel's renewed complaint, and in furtherance of the same pattern of retaliation alleged throughout this Complaint, MATC terminated Kohel's employment on December 13, 2024, less than sixty days later, purportedly due to the elimination of her position.

145. MATC's asserted financial and operational justification for eliminating Kohel's position is pretextual for the reasons set forth above.

146. As a direct and proximate result of MATC's unlawful retaliatory discharge, Kohel has suffered and continues to suffer lost wages and benefits, liquidated damages for willful violations, and other damages.

**COUNT X**
**Americans with Disabilities Act**
**Retaliatory Discharge**

147. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

148. Kohel engaged in activity protected under the ADA, 42 U.S.C. § 12203(a), by requesting and utilizing a reasonable accommodation for her disability, by opposing conduct she reasonably believed to be discriminatory, by filing Discrimination Complaints with the ERD, cross-filed with the EEOC, and by renewing her complaints of retaliation to MATC's President in or about September 2024.

149. In direct and close temporal proximity to Kohel's renewed complaints, and in furtherance of the same pattern of retaliation alleged throughout this Complaint, MATC terminated Kohel's employment on December 13, 2024, less than sixty days later, purportedly due to the elimination of her position.

150. MATC's asserted financial and operational justification for eliminating Kohel's position is pretextual for the reasons set forth above.

151. As a direct and proximate result of MATC's unlawful retaliatory discharge, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

152. MATC's conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages.

**COUNT XI**
**42 U.S.C. §§ 1981 and 1983**
**Race and Sex Discrimination (Denial of Equal Protection)**

153. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

154. At all times relevant hereto, MATC was a political subdivision of the State of Wisconsin, and each of the Individual Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

155. Defendant Mikulay, motivated by discriminatory animus toward Kohel's race and sex — as evidenced by, among other things, her repeated derogatory statements regarding "middle-aged White women" and her stated intent not to employ "middle-aged, White women grant writers" — personally participated in depriving Kohel of rights secured by 42 U.S.C. § 1981 and by the Equal Protection Clause of the Fourteenth Amendment, including by demoting Kohel in April 2020 and again in March 2021, removing her from grant oversight responsibilities, and excluding her from collaborative decision-making, each because of Kohel's race and sex.

156. Defendants Townsend, Bonds-Jones, Cruz, and Terrell-Webb personally participated in the December 13, 2024 termination of Kohel's employment, a decision that

continued and completed the pattern of race- and sex-based disparate treatment MATC Mikulay initiated, and that was undertaken, at least in part, because of Kohel's race and sex and in retaliation for her opposition to MATC Mikulay's discriminatory conduct.

157. MATC's asserted financial and operational justification for terminating Kohel's employment is pretextual for the reasons alleged above.

158. The decision to terminate Kohel's employment was made jointly by MATC's President and its Vice President and General Counsel, who, upon information and belief, possess final policymaking authority over personnel decisions of this nature on MATC's behalf such that their decision constitutes an act of official policy for which MATC is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). MATC's liability for the violation of Kohel's rights under 42 U.S.C. § 1981 is enforced through 42 U.S.C. § 1983, consistent with *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989).

159. As a direct and proximate result of the Individual Defendants' and MATC's unlawful conduct, Kohel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

160. The Individual Defendants' conduct was undertaken with malice or reckless indifference to Kohel's federally protected rights, entitling Kohel to an award of punitive damages against the Individual Defendants in their individual capacities.

161. This claim is timely. Kohel's termination occurred on December 13, 2024, well within the applicable limitations periods for claims under 42 U.S.C. §§ 1981 and 1983, and is not subject to Title VII's administrative exhaustion or charge-filing requirements.

**COUNT XII**
**Family and Medical Leave Act**
**Interference (Failure to Reinstate)**

162. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

163. At all relevant times, Kohel was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2), having been employed by MATC for at least twelve months and having worked at least 1,250 hours during the twelve-month period preceding her FMLA leave.

164. At all relevant times, MATC was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4), employing 50 or more employees within 75 miles of Kohel's worksite.

165. On March 25, 2021, MATC approved Kohel for intermittent leave under the FMLA for a serious health condition, which MATC renewed annually through 2024. In the fall of 2024, as a direct result of MATC's continued discrimination and retaliation against her, Kohel's serious health condition was exacerbated, and Kohel's physician certified her need for continuous FMLA leave beginning in the fall of 2024, which continued through the end of her employment.

166. Kohel was entitled, during and upon the conclusion of her FMLA leave, to be restored by MATC to her former position or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment, pursuant to 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.214.

167. MATC interfered with, restrained, and denied Kohel's exercise of her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by, among other things, failing and refusing to offer Kohel reinstatement to her former position or an equivalent position at any time during or

upon the conclusion of her continuous FMLA leave, and instead terminating her employment on December 13, 2024.

168. As a direct and proximate result of MATC's unlawful interference with her FMLA rights, Kohel has suffered and continues to suffer lost wages, salary, employment benefits, and other compensation, and other damages, entitling her to relief under 29 U.S.C. § 2617(a).

**COUNT XIII**
**Family and Medical Leave Act**
**Retaliatory Discharge**

169. Kohel incorporates by reference each of the preceding paragraphs as if fully set forth herein.

170. Kohel engaged in activity protected under the FMLA by requesting, being approved for, and taking intermittent FMLA leave beginning March 25, 2021 and continuous FMLA leave beginning in the fall of 2024.

171. MATC knew that Kohel was on approved continuous FMLA leave at the time it decided to terminate her employment.

172. MATC retaliated against Kohel for exercising her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2), by terminating her employment on December 13, 2024 while she was on continuous FMLA leave and without restoring her to her position or an equivalent position, and MATC's asserted financial and operational justifications for terminating Kohel's employment are pretextual for the reasons alleged above.

173. A causal connection exists between Kohel's exercise of her FMLA rights and MATC's decision to terminate her employment, as evidenced by, among other things, the temporal proximity between the certification of Kohel's continuous FMLA leave in the fall of

2024 and MATC's December 13, 2024 decision to terminate her employment, and MATC's shifting and pretextual justifications for that decision.

174. As a direct and proximate result of MATC's unlawful retaliation, Kohel has suffered and continues to suffer lost wages, salary, employment benefits, and other compensation, liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii), and other damages.

175. This claim is timely filed within the applicable two-year limitations period under 29 U.S.C. § 2617(c)(1), or, to the extent MATC's violation was willful, the three-year limitations period under 29 U.S.C. § 2617(c)(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Laurie Kohel respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. A declaration that Defendants' actions, policies, and practices as described herein violate Title VII, the ADEA, the ADA, the FMLA, and 42 U.S.C. §§ 1981 and 1983;

B. An order enjoining Defendants from engaging in further discriminatory and retaliatory conduct;

C. An award of back pay, including lost wages, bonuses, and benefits, with prejudgment interest;

D. An award of front pay in lieu of reinstatement, or, alternatively, reinstatement to a position commensurate with Kohel's experience and qualifications;

E. Compensatory damages for emotional distress, pain and suffering, humiliation, and inconvenience, in an amount to be determined at trial;

F. Punitive damages for Defendants' malicious and/or reckless conduct, to the extent permitted by law;

G. Liquidated damages under the ADEA and the FMLA for willful violations;

H. Reasonable attorneys' fees, costs, and disbursements incurred in bringing this action, pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 626(b), 42 U.S.C. § 12205, 42 U.S.C. § 1988, and 29 U.S.C. § 2617(a)(3);

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Kohel hereby demands a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b) and 42 U.S.C. § 1981a(c).

Dated this 22nd day of September, 2026

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN: 1008953
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: 262-785-9606
Facsimile: 262-785-1324
Email: AOlson@Employee-Advocates.com

Attorneys for Plaintiff Laurie Kohel